## Isaac Byers et al., Plffs. in Err., *v.* Henry Sheplar.

Title gained by adverse possession cannot be devested by parol declarations.

A verbal statement, by one whose title by adverse possession is complete,

NOTE.—Where a title has been acquired by adverse possession, the recognition of an outstanding title will not defeat it. London v. Lyman, 1 Phila. 465. But where there is conflict as to the adverse possession, declarations of the holder are admissible to show that it was not. St. Clair v. Shale, 20 Pa. 105; Sailor v. Hertzogg, 2 Pa. St. 182. By the act of May 31, 1901 (P. L. 352), there must be a public declaration of title by the filing of a statement of claim within six months after it is acquired, or a continuous possession, to assert it against an innocent purchaser, judgment creditor, or mortgagee.

to the owner of the paper title, that the former "recollected that there was a claim taken up for the property," and if the latter "believed that he was entitled to it, to go ahead and take it, and he would make no objections," is ineffectual to devest the title by possession.

It seems also that such declarations are not sufficiently specific to toll the statute of limitations, if made before adverse title by possession is complete.

(Decided November 15, 1886.)

Error to the Common Pleas No. 2 of Allegheny County to review a judgment on a verdict for the defendant in an action of ejectment. Affirmed.

At the trial before WHITE, J., the following facts appeared:

In 1838, Isaac Byers, Sr., the father of the plaintiffs, obtained from the commonwealth a warrant for a survey of the land in dispute, and had the land surveyed. No patent, however, was taken out until 1872. In that year a patent issued to Robert C. Byers, in trust for himself and the other plaintiffs, heirs of Isaac Byers, Sr., who, meanwhile, had died.

The defendant, although ineffectually asserting a perfect paper title from the commonwealth through various mesne conveyances, principally relied upon an adverse possession by John Sheplar and by Alexander McGown, whose executor was the grantor, Thomas Stewart, who was the defendant's grantor.

In rebuttal, the plaintiffs called W. C. Byers, a son of Robert C. Byers, to prove a conversation, soon after the patent was granted, between his father and McGown, then in possession.

*Q.* "State what, if any, conversation took place between your father and Alexander McGown in your presence with reference to this property in dispute."

*A.* "My father said the object of his visit there"——

*Q.* "Just tell us what he said."

*A.* "As near as I can recollect he stated that he came there to take possession of this property that his father had taken up years ago, and to see if Mr. McGown had any objections to his taking it and having it surveyed."

*Q.* "What did Mr. McGown say to him?"

*A.* "He said that he recollected that there was a claim taken up for the property, and if my father believed that he was entitled to it, to go ahead and take it and he would make no objections."

For the same purpose the plaintiffs made the following offer: "Defendant having relied upon the statute of limitations under the possession of himself, Thomas Stewart, and Alexander McGown, to make up the twenty-one years, Thomas Stewart having purchased the estate of Alexander McGown, in dispute, at orphans' court sale, plaintiffs' counsel proposes to prove by R. C. Byers, one of the plaintiffs, that Alexander McGown, under whom the defendant claims by virtue of the orphans' court sale, within twenty-one years, to wit, in June, 1872, disclaimed any ownership of any land in this case, and told said R. C. Byers that he might take possession of the same and have it surveyed and fenced."

Objection on the ground of incompetence, sustained. First assignment of error.

The plaintiffs requested the court to charge as follows: 1. "That if the jury find from the evidence that Alexander McGown, one of the parties under whom defendant claims, during the time he, the said McGown, had possession of the land in dispute in this case, admitted the plaintiff's title; such admission, if made within twenty-one years before the bringing of suit in this case, would toll the running of the statute of limitations, and so far as said statute is concerned, the plaintiffs in this case would then be entitled to recover."

*Ans.* "As a general proposition this is true, but under the facts in this case, it must be qualified as explained and more fully answered in the charge." Second assignment of error.

2. "If the jury find from the evidence that Alexander McGown, under whom defendant claims title in this case, while he had possession of the land in dispute, within twenty-one years of the bringing of this suit, stated to R. C. Byers, one of the plaintiffs, that if he, the said Byers, thought he was entitled to the property, to go and take it, or words to that effect, such statement amounts to a disclaimer on the part of the said McGown, and rebuts the running of the statute of limitations, and so far as the statute is concerned, the plaintiffs would be entitled to recover in this case."

*Ans.* "Whether McGown disclaims title is a question of fact for the jury, as explained in the charge." Third assignment of error.

The court charged, *inter alia,* as follows:

"Now a man's declarations, prejudicial to his interests, may always be given in evidence against him; and Alexander Mc-Gown, while he was in possession of this land, would be affected by any declarations or admissions that he made, inconsistent with his title, and they would be evidence, too, against any person claiming under McGown.

"If a man, clearly and unequivocally, admitted that he had no title to a piece of land and that the title was in someone else, it would be binding against him; that is, he would be estopped, ordinarily, from afterwards claiming title. It would be competent evidence against his title, or against his claim, that he had, at some time, admitted that he had no title or claim to it. But a man's admissions or declarations when made under a mistake, and where the other party is not prejudiced or injured, do not bind him. If a man, when questioned about his title or line, makes an admission that "this is not my land; this is your property," and makes such admission under a mistake, he has a right to correct it. If Alex. McGown, when R. C. Byers called upon him, actually and unequivocally admitted that this property was not his; that he had not the title to it and that the title was in him—Byers—and made such admission under a mistake, he would be allowed afterwards to correct that mistake; and if McGown made an admission, believing that the warrant and patent of Byers was superior to this title, and so made the admission, yet if he afterwards discovered that he had a superior title, he would not be estopped from asserting it unless Byers had done something in the meantime which would estop McGown from so doing. For instance, if, in pursuance of that admission, Byers had gone into possession and had built a house on it, made valuable improvements, then McGown would be estopped from ever asserting his title against Byers; but until Byers had done something in pursuance of the admission, he would not be. . . .

"Did Alex. McGown make admissions that he had no title to it? Was that the effect of the declaration? Does he mean by what he said, 'I have no title; do not claim title to that; never have claimed title to that; it is not mine but yours; go and take possession of it,' or does he mean, 'Well, if you think you have a better title than mine, try it; go and take it and we will see about it.' I think this is for you to say; whether McGown ad-

mitted the title of Byers to the property and disclaimed title in himself, or whether it was put conditionally as I have said. I say to you that such conditional admissions would not estop Alex. McGown, from afterwards asserting his title. If he made such admissions squarely; said to Byers, 'I have no title; go and take possession,' in so many words, and afterwards discovered he was mistaken, he is not estopped, unless in the meantime Byers had gone into possession and made valuable improvements or did something which would unquestionably estop McGown, on the ground that, encouraged by what had been admitted by him, he, Byers, had spent his money in improvements; but until he does something there is no estoppel and Alex. McGown could have asserted his title, provided that adverse possession had continued for twenty-one years prior to 1872."

These portions of the charge were specified in the fourth assignment of error.

*Isaac S. Van Voorhis,* for plaintiffs in error.—After rendering parties competent, the proviso in the act of April 15, 1869, is as follows: "*Provided,* This act shall not alter the law, as now declared and practised in the courts of this commonwealth, so as to allow husband and wife to testify against each other, nor counsel to testify to the confidential communication of his client; and this act shall not apply to actions by or against executors, administrators, or guardians, nor where the assignor of the thing or contract in action may be dead, excepting in issues and inquiries *devisavit vel non* and others, respecting the right of such deceased owner, between parties claiming such right by devolution, on the death of such owner."

Since the act of April 15, 1869, all parties are prima facie competent. To exclude a witness he must fall under some of the exceptions or provisos contained in that act.

Alex. McGown was not an assignor, within the reasoning of Karns v. Tanner, 66 Pa. 297; Pattison v. Armstrong, 74 Pa. 476; and McFerren v. Mont Alto Iron Co. 76 Pa. 181.

Where there is no privity between deceased assignor and the opposing party, as a general rule, the act applies. Waltman v. Herdic, 90 Pa. 463.

The rule that where one of the parties to a contract in litiga-

tion is, by death, denied the privilege of testifying in relation to it, the policy of the law will close the mouth of the other, applies to suits upon choses in action only. It does not apply in actions involving the title to real estate. Warren v. Steer, 112 Pa. 634, 17 W. N. C. 480, 3 Cent. Rep. 625, 5 Atl. 4.

After having admitted the evidence of W. C. Byers as to McGown's declarations, the court completely destroyed the whole effect by suggesting a guess (see assignment of error) that McGown was mistaken and did not know what he was saying.

*James W. Hall* for defendant in error.

PER CURIAM:

We cannot understand what effect the counsel for the plaintiffs in error proposed to attach to the declaration of Alexander McGown, made within twenty-one years of the bringing of the present suit. If before that time the statute had run, and thus vested title in McGown, he could not by a loose conversation talk away his right, for it would fall within the statute of frauds and perjuries, so that even his definite parol agreement would not effect a devestiture of that title.

But were the declaration, as we have it before us, made within the running of the statute it would amount to nothing because it is not sufficiently specific. In order to toll the statute, there must not only be an acknowledgment of the claimant's title, but also an agreement on the part of the intruder to leave the land or hold as tenant. Farmers' & M. Bank v. Wilson, 10 Watts, 261.

Of course, before the statute runs there is no title in the intruder, and to say so to the owner, or to anyone else, is a simple expression of the fact and law of the case, and of itself can have no effect one way or the other.

So it is, that unless he makes some definite promise to the owner which will prevent his taking the steps necessary for the regaining of his possession, there is no estoppel, and the statute continues to run.

The judgment is affirmed.